IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| TANYA LYNN THACKER, ) | |
| ) | CASE NO. BK07-40498-TJM |
| Debtor(s). ) | A07-4039-TJM |
| TANYA LYNN THACKER, ) | |
| ) | |
| Plaintiff, ) | CH. 7 |
| ) | |
| vs. ) | |
| ) | |
| SALLIE MAE, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the court on the defendant's motion for summary judgment (Fil. #8) and objection by the debtor-plaintiff (Fil. #9). Steven Holland represents the debtor, and Joel Carney represents Sallie Mae, Inc. Evidence and briefs were filed, and the motion was taken under advisement as submitted without oral arguments.

The motion is denied.

The debtor filed this adversary proceeding to discharge three student loans held by Sallie Mae, Inc., because repayment of the loans would cause an undue hardship on her and her dependents. According to Sallie Mae, two of the loans have been satisfied by their guarantor, so the dischargeability of only one loan is at issue. That loan was disbursed in 2002 and has an outstanding principal balance of $12,587.80.

The parties agree that the following facts are not in dispute:

1. The debtor, Tanya Lynn Thacker, was born May 12, 1976; is 31 years old; and is not married.

2. The debtor has one dependent, Kylie Alyse Fiehtner, born June 16, 2005.

3. Sallie Mae, Inc., holds a claim against the debtor, arising from a Signature Student Loan, with an initial disbursement date of August 19, 2002, and an outstanding principal balance of $12,587.80 as of November 30, 2007.

4. The debtor obtained the loan to attend the Scottsdale Culinary Institute in Scottsdale, Arizona. She left that institution in January 2003 and did not receive a degree.

5. The debtor filed her Chapter 7 bankruptcy petition on March 13, 2007, and received a discharge of eligible debts on June 28, 2007.

6. The debtor listed no secured creditors in her bankruptcy schedules.

7. According to her Schedule F, unsecured non-priority debt totaling $155,226.49 was discharged.

8. The debtor commenced this adversary proceeding on May 23, 2007, by filing a complaint against Sallie Mae, Inc., pursuant to 11 U.S.C. § 523(a)(8).

9. The debtor is employed as a production accountant with Evertson Operating Company of Kimball, Nebraska. She has held that position since December 2004, and currently earns $12/hour.

10. She contributes $48 each bi-weekly pay period to the company-sponsored 401(k) plan.

11. She has medical insurance coverage through her employer.

12. The debtor has been awarded monthly child support of $641.

13. The debtor's parents contribute to her family living expenses.

14. She received federal and state income tax refunds for 2006 in a total amount exceeding $5,000 due to earned income and child tax credits.

15. She has not sought, and does not plan to seek, employment outside the Kimball area.

The evidence shows that the debtor attended Scottsdale Culinary Institute in Arizona in the fall of 2002. She applied for a Signature Student Loan[1] from Sallie Mae in May 2002. Sallie Mae approved the loan for $19,080[2] on August 19, 2002, and disbursed the first quarterly payment of $4,500 to the school on that date. It appears that only two quarterly payments were actually

---

[1] The Signature Student Loan was a product of Sallie Mae's Signature Education Loan Program. Sallie Mae described that program to the debtor as "the nationally available program that combines low-cost federal loans with private supplemental loans. By borrowing through the Signature Education Loan Program, you have the convenience of a single source for education funding and only one education loan account to manage." Def.'s Ex. in Supp. of Mot. for Summ. J., Ex. D (Fil. #8).

[2] The approved loan amount of $18,000 plus a $1,080 pre-paid finance charge. Id.

disbursed.[3] The interest rate is currently 13.75 percent.

The debtor earned 26 credit hours at the culinary institute but says she suffered from stress and anxiety and left school in January 2003. She obtained full-time employment, but eventually returned to her hometown of Kimball, Nebraska, to live with her parents. She later moved into her own residence and currently resides in an apartment with her daughter.

The monthly loan repayment amount for all three loans was $214.14.[4] The monthly payment on the loan at issue here is $145.31.[5] Prior to filing her Chapter 7 petition, the debtor made semi-regular smaller monthly payments.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); Williams v. Marlar (In re Marlar), 267 F.3d 749, 755 (8th Cir. 2001).

The Bankruptcy Appellate Panel of the Eighth Circuit has explained in detail the bankruptcy court's duties in considering a motion for summary judgment:

> Summary judgment is only appropriate "if the record 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)); see Kraft v. Ingersoll-Rand Co., 136 F.3d 584, 585 (8th Cir. 1998); In re Wade, 219 B.R. at 818; see also Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable in adversary proceedings in bankruptcy). In making this determination, the function of the presiding court is not to weigh evidence and to make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see Wedl, 155 F.3d at 996; Quick v. Donaldson Co., 90 F.3d 1372, 1376-77 (8th Cir. 1996); see also Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1163 (8th Cir. 1998) ("When evaluating a motion for summary judgment, we must . . . refrain from assessing credibility."). Indeed, under the proper analysis, "the [c]ourt views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from that evidence.'" Prudential Ins. Co. v. Hinkel, 121 F.3d 364, 366 (8th Cir. 1997), cert. denied sub nom. Hinkel v. Hinkel, 522 U.S. 1048, 118 S. Ct. 693, 139 L. Ed. 2d 638 (1998); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587,

---

[3] Id., Ex. C.

[4] Id., Ex. J.

[5] Id., Ex. E.

106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); Dulany, 132 F.3d at 1237; Kunkel v. Sprague Nat'l Bank, 128 F.3d 636, 640 (8th Cir. 1997).

Upon a motion for summary judgment, the initial burden of proof is allocated to the movant in the form of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986); see Matsushita, at 586, 106 S. Ct. at 1355; Hinkel, 121 F.3d at 366; Nelson v. Kingsley (In re Kingsley), 208 B.R. 918, 920 (8th Cir. B.A.P. 1997). Once met, the burden then shifts to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)); see Matsushita, at 587, 106 S. Ct. at 1356; Tenbarge v. Ames Taping Tool Sys., Inc., 128 F.3d 656, 658 (8th Cir. 1997); In re Kingsley, 208 B.R. at 920.

In this respect, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts; [it] must show there is sufficient evidence to support a jury verdict in [its] favor." Chism v. W.R. Grace & Co., 158 F.3d 988, 990 (8th Cir. 1998) (quoting Matsushita, at 586, 106 S. Ct. at 1356) (internal quotation marks omitted); see Anderson, at 249, 106 S. Ct. at 2510. "[T]he mere existence of a scintilla of evidence in favor of the nonmoving party's position is insufficient to create a genuine issue of material fact." Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 562 (8th Cir. 1997) (internal quotation marks omitted, quoting In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1492 (8th Cir. 1997)), cert. denied, 523 U.S. 1040, 118 S. Ct. 1336, 140 L. Ed. 2d 498 (1998); see Anderson, at 252, 106 S. Ct. at 2512; Devine v. Stone, Leyton & Gershman, P.C., 100 F.3d 78, 81-82 (8th Cir. 1996), cert. denied, 520 U.S. 1211, 117 S. Ct. 1694, 137 L. Ed. 2d 821 (1997).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, at 322, 106 S. Ct. at 2552; see Chism, 158 F.3d at 990-91; Dulany, 132 F.3d at 1237; Rabushka, 122 F.3d at 562 (internal quotation marks omitted, quoting Temporomandibular Joint, 113 F.3d at 1492). "We look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Dulany, supra (quoting Anderson, at 248, 106 S. Ct. at 2510); see South Dakota Mining Assoc., Inc. v. Lawrence County, 155 F.3d 1005, 1009 (8th Cir.1998) (quoting same); Dodd v. Runyon, 114 F.3d 726, 729 (8th Cir. 1997).

Ries v. Wintz Props., Inc. (In re Wintz Cos.), 230 B.R. 848, 857-58 (B.A.P. 8th Cir. 1999).

A debtor seeking discharge of an educational loan debt bears the burden of proving, by a preponderance of the evidence, that repayment of those loans would impose an undue hardship on her and her dependents. Parker v. Gen. Revenue Corp. (In re Parker), 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005); 11 U.S.C. § 523(a)(8).

"Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the flexible "totality of the circumstances" test is used. Long v. Educational Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 553 (8th Cir. 2003) (citing Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981)). Andrews requires a totality-of-the-circumstances evaluation of the debtor's past, present, and reasonably reliable future financial resources; a calculation of the reasonable necessary living expenses of the debtor and her dependents; and any other circumstances unique to the particular bankruptcy case. Long, 322 F.3d at 554 (citing Andrews, 661 F.2d at 704 and Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 140 (B.A.P. 8th Cir. 1999)).

As the Eighth Circuit expressed in Long,

> Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt — while still allowing for a minimal standard of living — then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation — including assets, expenses, and earnings — along with the prospect of future changes — positive or adverse — in the debtor's financial position.

322 F.3d at 554-55 (citing Andresen, 232 B.R. at 141); Reynolds v. Penn. Higher Educ. Assistance Agency (In re Reynolds), 425 F.3d 526, 532 (8th Cir. 2005).

The debtor is not entitled to maintain her pre-petition standard of living, but she need not live in abject poverty. Brown v. Am. Educ. Servs., Inc. (In re Brown), 378 B.R. 623, 626 (Bankr. W.D. Mo. 2007) (citing Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley), 300 B.R. 813, 817, 818 (N.D. Fla. 2003)). Generally, a minimal standard of living requires resources to satisfy the family's need for food, shelter, clothing, and medical care. Id.

The Eighth Circuit made clear in Reynolds that a debtor's health situation should be taken into account in the undue hardship analysis because factors affecting a debtor's health also have a financial significance, such that the debtor may be unable to work or the burden of being in debt may create a vicious cycle where the stress causes physical and mental ailments affecting the debtor's ability to work. 425 F.3d at 532-33; Balm v. Salliemae Serv'g Corp. (In re Balm), 333 B.R. 443, 448 (Bankr. N.D. Iowa 2005).

Dischargeability of the student loan debt depends on the debtor's ability to pay the total debt. Morse v. Iowa Student Loan Liquidity Corp. (In re Morse), 345 B.R. 668, 673 (Bankr. N.D. Iowa 2006) (citing In re Reynolds, 303 B.R. 823, 838 & n.18 (Bankr. D. Minn. 2004) (debt will be excepted from discharge if surplus income matches total amount of amortized loan) and Faktor v. United States (In re Faktor), 306 B.R. 256, 262-63 (Bankr. N.D. Iowa 2004) (court may not grant partial discharge of student loan)).

According to the debtor's schedules, her average monthly income as of the petition date was $1,528.28, with average monthly expenses of $1,515, leaving disposable income of $13.28. Sallie

Mae criticizes certain of the debtor's expenditures, particularly those for cosmetics, music, video rentals, cable television, and cell phone service. The debtor responds with an explanation for each of those. She states that she sells Avon cosmetics and the checks written to Avon each month represent her customers' purchases. She stated that she earns $20 to $30 in Avon commissions each month. Regarding the music downloads she purchased, the debtor states that the songs were recommended by her therapist to help her cope with anxiety. The debtor says the cable television subscription and the video rentals are entertainment expenses for herself and her daughter. She also explains that her only telephone is her cell phone.

In addition, the debtor points out that she is driving a 14-year-old car which needs repairs and that she expects to have to replace the car at some point. She further states that she needs to replace her washer and dryer and buy new beds for herself and her daughter. She plans to use her anticipated 2007 tax refunds for these expenses as well as her legal expenses.

Sallie Mae also questions a monthly $12 expense for credit reports. It is unclear why the debtor needs those.

Sallie Mae analyzed the deposits and withdrawals from the debtor's checking account and determined that deposits averaged about $1,800 per month, or $300 more than the monthly income shown on Schedule I. The debtor states in her affidavit that her income consists entirely of her salary from Evertson, her Avon sales, and money from her parents.[6] She has not received any of the child support payments as ordered from the father of her daughter. She met with the county attorney and has completed paperwork for assistance with collection of the child support, but holds little hope for any significant recovery, as the father has not been employed and has resided in the custody of law enforcement.

With regard to other "reasonably reliable future financial resources," the debtor states in her affidavit that she is currently in the highest-paying job in Kimball, Nebraska, for which she is qualified; that she is not eligible for financial aid due to her current student loans, so she cannot afford to continue her education; that her credits from the Scottsdale school will not transfer; that she is not suited for the culinary field and does not intend to pursue such employment; and that her therapist and her family agree that she should remain in the Kimball area so she can continue treatment for a bi-polar disorder with which she was diagnosed in 2007 and so that her family may continue to assist her with caring for her daughter.

There are enough factual questions here that summary judgment must be denied and the case set for trial. It is not at all clear from the evidence currently before the court whether repayment of this loan will create an undue hardship for this debtor.

If the debtor truly does have an excess of $300 each month, then she could certainly afford to pay her student loans. However, if, as it appears, the debtor's parents are providing financial assistance to help her make ends meet each month, then the $300 "excess" is actually a phantom

---

[6]Sources of income other than the debtor's primary employment were not disclosed in her bankruptcy schedules.

amount. An updated and complete statement of her current income and expenses would be beneficial in providing a true picture of the debtor's present financial situation.

Sallie Mae asserts that the debtor could use her $48 bi-weekly contribution to her retirement plan for her student loan payment instead. In this district, student loan debtors have been ordered to cease retirement plan contributions and use the money for debt repayment. May v. Texas Higher Educ. Coord. Bd. (In re May), 368 B.R. 850, 860 (Bankr. D. Neb. 2007). See also Williams v. Missouri S. State Coll. (In re Williams), 233 B.R. 423, 429 (Bankr. W.D. Mo. 1999) (reduction in 401(k) contribution would enable debtors to make small monthly payment on student loan debt). In the present case, this debtor likely has a long working life ahead of her and will have the opportunity in the future to save money for her retirement.

However, even if the debtor were to put the 401(k) contribution towards her student loan payment, it is unclear that her stated monthly payment is sufficient to pay down the loan. Evidence from Sallie Mae on the amortization of the loan would be helpful. In addition, it is not clear on this record whether there is available to the debtor any sort of restructuring or forgiveness program for this loan.

In addition to the specific items mentioned above, the debtor should be prepared to provide evidence at trial of her present and reasonably likely future financial resources, reasonable living expenses for herself and her dependent, and any other unique circumstances bearing on the case. In particular, evidence regarding future raises and/or opportunities for advancement at her current job, evidence regarding the status of child support collection efforts, evidence regarding her medical conditions and the effect, if any, on her ability to work, and evidence regarding the financial support provided by her family would be relevant to (but not solely determinative of) the issue of dischargeability.

IT IS ORDERED the defendant's motion for summary judgment (Fil. #8) is denied.

DATED:    February 8, 2008

BY THE COURT:

Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
    Steven Holland
    *Joel Carney
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.